UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**TARA D. GIBSON,**

      **Plaintiff,**

v.                                                       Case No:   6:17-cv-519-Orl-41GJK

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

_____

## REPORT AND RECOMMENDATION

Tara Gibson (the "Claimant") appeals to the District Court a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Doc. No. 1. Claimant argues that the Administrative Law Judge committed reversible error by: 1) applying improper legal standards to a Physical Capacities Evaluation ("PCE") completed by Dr. I. Basil Keller; 2) applying improper legal standards to an Off Work Form completed by Dr. Fabio Roberti; 3) making an inadequate assessment of Claimant's credibility; 4) posing an improper hypothetical to the vocational expert ("VE"); and 5) relying on VE testimony that was ambiguous as to whether Claimant had the ability to perform a significant number of jobs in the national economy. Doc. No. 17 at 16-23, 27-29, 33-36. Claimant requests that the Court reverse the Commissioner's final decision for an award of benefits or, in the alternative, reverse the Commissioner's final decision and remand the case for further proceedings. *Id.* at 40. For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

I.      PROCEDURAL BACKGROUND

On July 31, 2012, Claimant filed her SSI and DIB applications alleging an onset date of July 10, 2012. R. 643-44. On September 20, 2012, Claimant's applications were denied initially. R. 121-25. On December 27, 2012, Claimant's applications were denied upon reconsideration. R. 137-141. On March 12, 2013, Claimant requested a hearing before an ALJ. R. 149-150. On January 30, 2014, Claimant attended a hearing before Administrative Law Judge Scott A. Tews ("ALJ Tews"). R. 53-72. On March 3, 2014, ALJ Tews issued an unfavorable decision finding Claimant not disabled. R. 10-24. On May 1, 2014, Claimant requested review of ALJ Tews' decision. R. 6. On September 8, 2014, the Appeals Council denied Claimant's request. R. 1-4.

On October 26, 2014, Claimant appealed the Commissioner's final decision to the United States District Court for the Southern District of Florida.[1] R. 637. On February 25, 2016, United States District Judge Kenneth A. Marra issued an order reversing the Commissioner's final decision and remanding the case for further proceedings. R. 643-660. Judge Marra's order also provided certain instructions to the ALJ. First, Judge Marra directed the ALJ to consider Dr. Roberti's medical opinions and identify the weight given to those opinions and the reasons therefor. R. 653. Second, Judge Marra recommended that the ALJ ask Dr. Carlos Suarez, a non-examining physician, to provide an updated medical opinion that includes a review of medical records created after he gave his initial medical opinion. R. 657. Third, Judge Marra directed the ALJ to re-evaluate Claimant's Residual Functional Capacity ("RFC"). *Id.* Fourth, Judge Marra directed the ALJ to re-evaluate Claimant's credibility.[2] R. 659. On April 22, 2016, the Appeals Council ordered further proceedings consistent with Judge Marra's order. R. 686.

---

[1] At the time Claimant filed her first appeal, she was residing in Vero Beach, Florida. R. 637.

[2] Judge Marra also examined whether the ALJ properly considered Dr. Keller's medical opinions. R. 653-56. Judge Marra did not decide this issue because the case was already being remanded to review Dr. Roberti's records. R. 656.

On August 17, 2016, Claimant attended a hearing before Administrative Law Judge Janet Mahon (the "ALJ"). R. 609-635. On December 22, 2016, the ALJ issued an unfavorable decision finding Claimant not disabled. R. 583-601. On March 23, 2017, Claimant filed her appeal of the ALJ's decision with this Court.[3]

## II.     THE ALJ'S DECISION

The Social Security regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citing 20 C.F.R. § 404.1520). At step one, the ALJ found that Claimant has not engaged in substantial gainful activity since her alleged onset date. R. 586. At step two, the ALJ found that Claimant has severe impairments of multiple sclerosis; cervical degenerative disc disease, status post-fusion surgery; lumbar degenerative disc disease; morbid obesity; sleep apnea; and major depressive disorder. *Id.* At step three, the ALJ found that Claimant does not have an impairment or combination thereof that meets or medically equals the severity of one of the listed impairments. R. 587-591.

The ALJ then found that Claimant had the RFC to perform sedentary work except Claimant is limited to jobs where tasks are simple and is limited to lifting ten pounds occasionally and less than ten pounds frequently. R. 591. She is limited to standing and walking for up to two hours and sitting for up to six hours in an eight-hour workday. *Id.* Claimant is limited to occasional climbing but must never climb ropes, ladders, or scaffolds. *Id.* She must avoid even moderate exposure to hazards such as heights and machinery. *Id.* The ALJ also found Claimant's statements regarding the severity of her limitations to be not credible. R. 598. At step four, the ALJ found that Claimant was unable to perform any of her past relevant work. R. 599. At step five, the ALJ found that

---

[3] Claimant filed her current appeal in this Court because she currently lives in Orlando, Florida. Doc. No. 1.

Claimant was able to perform a significant number of jobs in the national economy, namely that of an escort vehicle driver, a cutter and paster for press clippings, and a stuffer. R. 600.

## III. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must take into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (citations and quotations omitted).

## IV. ANALYSIS

### A. The PCE

On April 19, 2013, Dr. Keller, a treating physician, completed the PCE. R. 439-441. The following findings are taken from the same. Claimant can only lift and/or carry less than five to ten pounds. R. 439. Claimant can stand and/or walk for one to two hours in an eight-hour workday and fifteen to thirty minutes without interruption. R. 439-440. Claimant can sit for one to two hours in an eight-hour workday and up to two hours without interruption. R. 440. Claimant can never

climb, stoop, crouch, kneel, or crawl and can occasionally balance. *Id.* Claimant requires the use of a cane when her multiple sclerosis flares up. R. 441.

The ALJ gave little weight to the PCE for two reasons. R. 597-98. First, the ALJ found that the limitations found in the PCE were somewhat excessive in light of Dr. Keller's treatment notes and other medical evidence. R. 598. Specifically, the ALJ found that "[t]reatment notes simply do not confirm the assertion that [Claimant] required a cane during flare-ups for multiple sclerosis. Nor do physical findings establish a complete inability to climb, stoop, crouch, kneel, or crawl." *Id*. In support of this reason, the ALJ cited a: 1) September 2013 treatment note from Dr. Keller noting Claimant's normal station and gait and good strength in the upper and lower extremities; 2) December 16, 2013 treatment note from Dr. Meredith Wicklund noting Claimant's ability to rise from a chair without difficulty, ambulation with normal gait, and full strength in nearly all muscle groups; 3) September 18, 2012 treatment note from the Indian River County Health Department noting normal gait; 4) December 18, 2012 treatment note from Dr. Keller noting normal station and gait, negative straight leg raising, good strength in manual motor testing, and an ability to stand well on her toes and heels; and 5) September 19, 2015 treatment note from Florida Hospital noting no musculoskeletal pain and normal range of musculoskeletal motion and strength. *Id.* (citing R. 394, 402, 538, 563-64, 835).

Second, the ALJ found that Dr. Keller completed the PCE not long after Claimant was prescribed Avonex, which provided some relief for her multiple sclerosis symptoms.[4] R. 598. In support, the ALJ cites a September 10, 2013 treatment note from Dr. Keller stating that the medication "does seem to be of considerable benefit to her." *Id.* (citing R. 549).

---

[4] The ALJ cites a March 6, 2013 treatment note from Dr. Taher Hussainy which states that he "is going to call the Avonex representative who will start the process of getting approval and see if [Claimant] could get the medicine for free for the time being until she gets approved …" R. 598 (citing R. 409). Dr. Hussainy's treatment note was completed a little over a month before Dr. Keller completed the PCE. R. 409, 441.

Claimant argues that the ALJ committed reversible error for three reasons. First, Claimant argues that the ALJ overlooked evidence in support of her SSI and DIB applications. Doc. No. 17 at 19-21. Second, Claimant argues that "the ALJ determined that physical findings did not establish that [Claimant] was unable to climb, stoop, crouch, kneel, [and] crawl, but failed to provide further explanation of what evidence was contrary to the opinion." *Id.* at 21. Third, Claimant argues that the ALJ's reason regarding Claimant's improvements through the use of Avonex is not supported by substantial evidence because Dr. Keller stated that such medications provided relief for her symptoms from multiple sclerosis, not Claimant's limitations arising from her morbid obesity. *Id.* at 19 (citing R. 541).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part in determining whether a claimant is disabled. In cases involving an ALJ's handling of medical opinions, "substantial-evidence review . . . involves some intricacy." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013).[5] In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* at 1178-79 (citations omitted). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (citations omitted). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (finding that a failure to state with particularity the

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36–2.

weight given to medical opinions and the reasons therefor constitutes reversible error). An ALJ may not "implicitly discount" or ignore any medical opinion. *Winschel*, 631 F.3d at 1178-79; *MacGregor*, 786 F.2d at 1053; *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962-63 (11th Cir. 2015) (finding that it is reversible error for the ALJ to fail to state weight given to a non-examining physician's opinion).

Absent good cause, the opinion of a treating physician must be given substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). However, good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

Claimant argues that the ALJ overlooked evidence in support of her SSI and DIB applications when weighing the PCE. Doc. No. 17 at 19-21. The ALJ found that the limitations found in the PCE were somewhat excessive in light of Dr. Keller's treatment notes and other medical evidence. R. 598. When making this finding, the ALJ made specific citations to Dr. Keller's treatment notes and other medical evidence in the record. R. 598. *See also supra* p. 5. Thus, the ALJ's first reason for giving little weight to the PCE is supported by substantial evidence. While Claimant cites a number of treatment records in support of her SSI and DIB applications, the undersigned declines to reweigh the evidence. As noted above, the Court must give substantial deference to the ALJ's decision, even if the evidence preponderates against it. *Barnes*, 932 F.2d at 1358. *See also Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. Appx. 862, 864 (11th Cir. 2012) ("Because our limited review precludes us from reweighing the evidence, when the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight, and those

reasons are supported by substantial evidence, there is no reversible error"). Accordingly, it is recommended that the Court reject Claimant's first argument of reversible error regarding the ALJ's treatment of the PCE.

Claimant's second argument states that "the ALJ determined that the physical findings did not establish that [Claimant] was unable to climb, stoop, crouch, kneel, [and] crawl, but failed to provide further explanation of what evidence was contrary to the opinion." Doc. No. 17 at 20-21. The ALJ, however, cited a number of treatment records that showed normal gait, normal range of musculoskeletal motion, and good musculoskeletal strength. R. 598. *See also supra* p. 5. Contrary to Claimant's argument, the ALJ cited specific evidence supporting his finding that Claimant was able to climb, stoop, crouch, kneel, and crawl. *Id.* Accordingly, it is recommended that the Court reject Claimant's second argument of reversible error regarding the ALJ's treatment of the PCE.

Claimant's final argument states that the ALJ's finding regarding Claimant's improvements through the use of Avonex is not supported by substantial evidence because such medication only benefitted Claimant's multiple sclerosis symptoms and not symptoms arising from her obesity. Doc. No. 17 at 19. The PCE states that the limitations stated therein are based on Dr. Keller's findings of multiple sclerosis, severe lumbar spondylosis and disc disease, and morbid obesity. R. 439. Thus, it appears that Dr. Keller found that Claimant's limitations were the result of multiple impairments. *Id.* Nevertheless, the ALJ correctly noted that Dr. Keller's records indicate that Claimant received considerable benefit from Avonex after the PCE was issued. R. 598 (citing R. 549). Thus, the ALJ's statement about the impact of Avonex on Claimant's condition is supported by substantial evidence. Based on the foregoing, it is recommended that the Court reject Claimant's third argument of reversible error regarding the ALJ's treatment of the PCE.

### B. The Off Work Form

On November 6, 2012, Dr. Roberti completed the Off Work Form stating the following findings. R. 380. Claimant is unable to lift or carry over twenty pounds. *Id.* Claimant is unable to perform work requiring pushing or pulling. *Id.* Claimant is unable to perform work requiring walking, standing, or sitting without a break every sixty minutes. *Id.* Claimant is unable to perform work requiring sitting without a break every sixty minutes. *Id.* Claimant cannot be around high impact vibration and cannot perform prolonged work in a kneeling or squatting position. *Id.* The Off Work Form contains a checkbox allowing the physician to designate the limitations stated therein as permanent. *Id.* Dr. Roberti did not find Claimant's limitations to be permanent but found Claimant's limitations to be only temporary until a re-evaluation in two months. *Id.*[6]

The ALJ gave little weight to the Off Work Form for three reasons. R. 597. First, the ALJ found that Dr. Roberti completed the Off Work Form "after only [a] single evaluation … of a time when [Claimant's] medical condition was not fully understood." *Id.*[7] Second, the ALJ found that the limitations found in the Off Work Form "were only temporary restrictions on [Claimant's] physical functioning. Notably the [Off Work Form] … included a checkbox for permanent restrictions, which [Dr. Roberti] eschewed." *Id.* Finally, the ALJ found that the limitations in the Off Work Form were not fully consistent with the medical evidence. *Id.* The ALJ specifically noted

---

[6] Dr. Roberti completed three other treatment records on the same day he completed the Off Work Form. First, Dr. Roberti completed a form detailing his review of Claimant's bodily systems in which he noted weight gain, fatigue, back pain, neck pain, and numbness in the fingers. R. 378-379. Second, Dr. Roberti completed a progress note finding that Claimant has: 1) a displacement of the lumbar intervertebral disc without myelopathy; and 2) degeneration of the lumbar or lumbosacral disc. R. 383. Third, Dr. Roberti completed an initial office visit evaluation noting mildly antalgic gait, slightly decreased range of motion in the lumbosacral spine, and normal muscle bulk, strength, and tone in all four extremities except for Claimant's hip flexors. R. 385. All of Dr. Roberti's treatment records are dated November 6, 2012, and the record does not contain any more treatment records from Dr. Roberti. R. 375-388.

[7] Specifically, the ALJ noted that the treatment notes "do not show a definitive diagnosis of multiple sclerosis until early the following year after Dr. Hussainy performed a diagnostic spinal tap." R. 597 (citing R. 409-410).

that the "record does not support a complete inability to push and pull … as multiple physical examinations revealed normal strength in the upper extremities." *Id.* (citing R. 385, 832, 864).

Claimant argues that the ALJ erred in giving little weight to the Off Work Form for three reasons. First, Claimant argues that the ALJ's reason regarding Dr. Roberti being a one-time examining physician does not fully evaluate the Off Work Form, and thus, "is contrary to Social Security law which demands that all medical opinions must be evaluated." Doc. No. 17 at 22. Second, Claimant argues that the "temporary nature of the limitations [in the Off Work Form] does little to evaluate the credibility of the opinion; it neither credits nor discredits the opinion." *Id.* at 21-22.[8] Third, Claimant argues that the ALJ's third reason "centers on [Claimant's] normal upper extremity strength" and ignores Dr. Roberti's findings of "decreased cervical spine range of motion which may have influenced his opinion regarding pushing/pulling." *Id.* at 22. Regarding this third reason, Claimant argues that the ALJ should have recontacted Dr. Roberti rather than give little weight to his opinion. *Id.*

With regard to Claimant's first argument, the parties differ as to whether Dr. Roberti is one-time examining physician or a treating physician. Doc. No. 17 at 21, 25-26. As noted above, Dr. Roberti's treatment records are all dated November 6, 2012.[9] R. 375-388; Doc. No. 17 at 6-7. *See also supra* p. 9 n. 6. Claimant has not presented any other treatment records showing that she visited Dr. Roberti on any date other than November 6, 2012. Doc. No. 17 at 6-7, 21-23. Thus, Dr. Roberti is a one-time examining physician whose opinions are not entitled to any specific weight or deference. *See McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987); *Huntley v. Soc. Sec.*

---

[8] In support of this statement, Claimant states that the record shows her condition continued to deteriorate over time after the Off Work Form was completed. Doc. No. 17 at 22.

[9] A treatment note from Dr. Roberti states that Claimant was to attend another appointment with him on December 4, 2012. R. 375. The record, however, does not contain any records from that appointment.

*Admin, Comm'r.*, 683 Fed. Appx. 830, 832 (11th Cir. 2017) ("The [ALJ] need not defer to the opinion of a physician who conducted a single examination because that physician is not a treating physician"). Furthermore, contrary to Claimant's argument, the ALJ considered the Off Work Form and gave little weight to it because she found that it was issued before Claimant's medical condition was fully understood. R. 597. In support of this reason, the ALJ noted that the treatment notes "do not show a definitive diagnosis of multiple sclerosis until early the following year" and cited to a March 6, 2013 treatment note from Dr. Taher Hussainy showing a positive spinal fluid test for multiple sclerosis. *Id.* (citing R. 409-410). Thus, because: 1) the Off Work Form is not entitled to any specific weight; and 2) the ALJ's first reason for giving little weight to the Off Work Form is supported by substantial evidence, it is recommended that the Court's reject Claimant's first argument of reversible error regarding the ALJ's treatment of the Off Work Form.

Claimant's second argument states that the ALJ's reason regarding the temporary nature of the limitations found in the Off Work Form is not supported by substantial evidence. Doc. No. 17 at 21-22. Specifically, Claimant argues that the "temporary nature of the limitations [in the Off Work Form] does little to evaluate the credibility of the opinion; it neither credits nor discredits the opinion." *Id.* Claimant also notes that while the limitations found in the Off Work Form were temporary, "the record shows her condition continued to deteriorate over time; and months later Dr. Keller rendered his opinion of disability." *Id.* at 22. Claimant's argument is unavailing for two reasons. First, Claimant cites no legal authority in support of her argument, and this Court has found no error in an ALJ giving little weight to a medical opinion because it contained temporary limitations. *See Bayes v. Comm'r of Soc. Sec.* No. 6:16-cv-1976-Orl-28DCI, 2017 WL 5565274, at * 5 (M.D. Fla. Oct. 27, 2017) (finding no error in the ALJ giving little weight to a medical opinion because the "plain language of [the opinion] suggests the restriction was temporary, as the

restriction was only meant to be in place 'until' [the claimant] was released by a back surgeon"). Second, to the extent that Claimant asks the Court to consider the portions of the record reflecting her deteriorating condition, the undersigned declines to reweigh the evidence for the reasons stated previously. *See supra* pp. 7-8. Thus, it is recommended that the Court reject Claimant's second argument of reversible error regarding the ALJ's treatment of the Off Work Form.

Claimant's third argument states that the ALJ's finding regarding Claimant's examination findings of normal strength in the upper extremities is not supported by substantial evidence because it ignores Dr. Roberti's findings regarding Claimant's decreased cervical spinal range of motion. Doc. No. 17 at 22. Specifically, Claimant argues that other findings from Dr. Roberti may have influenced his opinion regarding Claimant's ability to push and pull, and the ALJ should have recontacted Dr. Roberti rather than give little weight to his opinion. *Id.* "Medical sources should be recontacted when the evidence received from that source is inadequate to determine whether the claimant is disabled." *Couch v. Astrue*, 267 Fed. Appx. 853, 855 (11th Cir. 2008). In evaluating whether remand is necessary due to insufficient evidence, the Court considers "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir. 1995).

Here, the ALJ's finding is supported by substantial evidence because she cited to specific treatment records showing normal strength in Claimant's upper extremities. R. 597 (citing R. 385, 832, 864). Furthermore, Claimant does not argue that any of Dr. Roberti's treatment notes are missing from the record. *See Couch,* 267 Fed. App'x at 855-56 (finding no duty to recontact a physician because "it appears that the ALJ was in possession of all of [the doctor's] medical records and the information contained therein was adequate to enable the ALJ to determine that [the claimant] was not disabled"). The mere fact that the ALJ did not weigh the Off Work Form or

consider certain treatment records in the manner that Claimant desired does not trigger the ALJ's duty to recontact Dr. Roberti, nor does it render the ALJ's treatment of the Off Work Form erroneous. Thus, because Claimant has failed to show that the record revealed evidentiary gaps resulting in unfairness or clear prejudice, it is recommended that the Court's reject Claimant's third argument of reversible error regarding the ALJ's treatment of the Off Work Form.

### C. Claimant's Credibility

The ALJ found Claimant's allegations regarding the severity of her impairments not credible.[10] R. 598. As to Claimant's physical limitations, the ALJ found that: 1) the record does not substantiate Claimant's allegations that she needed to lie down for a significant portion of the day; 2) the record does not substantiate Claimant's alleged consistent use of a cane; 3) neurological treatment notes suggest that Claimant's multiple sclerosis symptoms improved with medication with no more than infrequent treatment for flare-ups; and 4) treatment records revealed a general improvement in Claimant's overall health after she underwent gastric bypass surgery. R. 598-99.

Claimant does not directly challenge the ALJ's credibility findings, but rather presents evidence in support of her alleged limitations. Doc. No. 17 at 28-29. The Court must give substantial deference to the ALJ's findings, even if the evidence preponderates against those findings. *See supra* pp. 4, 7-8. The undersigned declines to reweigh evidence, and thus, it is recommended that the Court find no reversible error in the ALJ's credibility finding.[11]

---

[10] In the Eleventh Circuit, subjective complaints of pain are governed by a two-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The lack of a sufficiently explicit credibility finding may be grounds for remand if credibility is critical to the case's outcome. *Id*.

[11] In her credibility finding, the ALJ notes that "[although Claimant] reported a range of subjective symptoms at an evaluation performed by Dr. Wicklund, a contemporaneous physical examination gave modest findings." R. 598 (citing R. 563-64). Claimant challenges this finding by arguing that "the ALJ also asserted that [Dr. Wicklund] examined [Claimant] contemporaneously with her symptoms yet the report fails to indicate the same." Doc. No. 17 at 29 (citing R. 598, 561-65). Dr. Wicklund's treatment note, however, revealed normal gait, normal postural stability,

### D. The VE Hypothetical

#### 1) Incomplete Hypothetical

At the hearing, the ALJ posed a hypothetical to the VE that matched Claimant's RFC. R. 632. The VE found that Claimant could not perform any of her past relevant work, but was able to perform a significant number of jobs in the national economy as an escort vehicle driver, cutter and paster for press clippings, and a stuffer. R. 632-33. Claimant argues that the ALJ presented an incomplete hypothetical to the VE:

> This hypothetical failed to set forth all of [Claimant's] limitations as supported by the record. The medical opinions provided by Drs. Roberti and Keller are more limiting than the hypothetical posed. According the appropriate weight to these opinions, for the reasons described above, the additional opined limitations should be included in the hypothetical question. Such additional limitations should include manipulative limitations arising from [Claimant's] the use of a cane, after determining the frequency of the use.

Doc. No. 17 at 34 (citations omitted). Thus, Claimant argues that the ALJ should have incorporated limitations from the opinions of Drs. Roberti and Keller in the VE hypothetical, especially Claimant's manipulative limitations arising from the use of a cane. *Id.*

The Eleventh Circuit has held that an ALJ is not required to include findings in the VE hypothetical that are properly rejected. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (noting that "the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). As noted above, the ALJ properly gave little weight to the opinions of Drs. Keller and Roberti. R. 597-598. Furthermore, when making her credibility finding, the ALJ found that the physical examinations in the record do not confirm the consistent use of a cane. R. 598. Thus, because the ALJ was not required to incorporate the above-

---

an ability to arise from a chair without difficulty, and full strength in the extremities. R. 564. Thus, the ALJ's finding is supported by substantial evidence.

referenced limitations, it is recommended that the Court reject Claimant's first argument of reversible error regarding the VE hypothetical.

### 2) Ambiguity in VE Testimony

After posing the aforementioned hypothetical to the VE, the ALJ posed two other hypotheticals, and the following exchange occurred:

> ALJ: Let's take the same hypothetical claimant. Let's assume that the claimant is even further limited. Limited to lifting less than [ten] pounds occasionally and frequently. Standing and walking for less than two hours in an eight-hour work day. Sitting for no more than four hours in an eight-hour work day. All of the other restrictions remain. In addition, the claimant would be an unreliable employee who would be absent from work at least one time per week. How would that effect the jobs that you listed? And would there be any other jobs that would meet the requirements?
>
> VE: Those jobs that I gave to you in response to hypothetical number one would not be applicable and – nor, would any other jobs in the national economy, your honor …. Based upon my education, training, and experience. <u>Social Security doesn't deal with – it does deal with part time work. But it doesn't deal with missing days…</u>
>
> ALJ: Going back to hypothetical number one, if the hypothetical claimant had the additional limitation of having to take a break once [an] hour during the work day ….
>
> VE: That would change the answer. There would be no jobs available. Same reason as to hypothetical number two. Based on my education, training, and experience. <u>Social security – I mean, the [Dictionary of Occupational Titles ("DOT")] does not address. I meant to say the DOT in my previous response --- does not address excessive breaks.</u>

R. 633-34 (emphasis added). Thus, the VE testified that the DOT does address part-time work, but does not address a claimant taking excessive breaks or missing days from work. *Id.* Claimant argues that the VE's testimony was ambiguous because "the [VE's testimony] raises the question of whether he understood that he was to respond to the ALJ's hypothetical questions by citing only

to numbers of full-time permanent jobs." Doc. No. 17 at 35.[12] Because of such ambiguity, Claimant argues that the jobs the VE presented after the first hypothetical "may have included part-time or temporary jobs, and because the issue was not clarified at the hearing or in the ALJ's decision, the VE's testimony is unreliable." *Id.*

After reviewing the VE's testimony, the undersigned finds Claimant's argument unavailing. Claimant's argument regarding this portion of the VE's testimony is conjecture and does not show any clear error in the VE's discussion regarding the DOT. As noted by the Commissioner, the VE's discussion regarding the DOT does not call into question the occupations the VE found Claimant could perform in the national economy. Instead, the VE only stated that the DOT addresses part-time work but does not address a claimant taking excessive breaks or missing days from work. R. 633-34. The VE made these statements in response to limitations found within the ALJ's hypotheticals, namely Claimant: 1) being absent from work at least once per week; and 2) having to take a break once an hour. *Id.* Such statements do not suggest that the VE considered, or may have considered, part-time jobs when providing his testimony. Considering the foregoing, the undersigned finds no ambiguity in the VE's testimony, and thus, it is recommended that the Court find no reversible error.

## V. CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

1) **AFFIRM** the Commissioner's final decision; and
2) **DIRECT** the Clerk to enter judgment in favor of the Commissioner and to close the case.

---

[12] Social Security Ruling 96-8p provides that a claimant's "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8P (S.S.A.), 1996 WL 374184, at * 1. A "regular and continuing basis" is defined as being eight hours per day, for five days per week, or an equivalent work schedule. *Id.* Such work, however, "is not always required when evaluating an individual's ability to do past relevant work at step [four] of the sequential evaluation process." *Id.* at * 2 n. 2.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

Recommended in Orlando, Florida on March 7, 2018.

*/s/ Gregory Kelly*
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy